Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| Jorge Ortiz Sánchez **Querellante-Recurrente** Vs. Corporación del Fondo del Seguro del Estado **Querellada-Recurrida** | TA2025RA00229 | *REVISIÓN ADMINISTRATIVA* procedente de la Comisión Industrial de Puerto Rico Querella Núm. SOBRE: Traslado Ilegal y Despojo de Funciones |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Hernández Sánchez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 10 de diciembre de 2025.

El 15 de septiembre de 2025, el Sr. Jorge Ortiz Sánchez (señor Ortiz o el recurrente) compareció ante nos mediante un recurso de *Revisión Judicial* y solicitó la revocación de la *Determinación Corregida De Autoridad Nominadora Con Respecto a Vista Administrativa Sobre Traslado Ilegal Despojo De Funciones* que se emitió y notificó el 18 de agosto de 2025, por la Comisión Industrial de Puerto Rico (Comisión Industrial). Mediante el aludido dictamen, la Comisión Industrial determinó que en el traslado del señor Ortiz no medió actuación ilegal, arbitraria o discriminatoria. En consecuencia, declaró No Ha Lugar la *Apelación* instada por el recurrente.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 12 de febrero de 2024, la Asociación de Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado, en representación del señor Ortiz, instó una acción intitulada *Apelación* en la Oficina de Recursos Humanos y Relaciones Laborales de la Comisión Industrial sobre traslado ilegal y despojo de funciones.[1] Allí,

---

[1] *Véase*, Entrada 1 del apéndice del recurso, SUMAC TA, págs. 1-6.

alegó que el recurrente era empleado de carrera de la Comisión Industrial y se desempeñaba como Supervisor de la Oficina de Servicios Generales y Planta Física. No obstante, sostuvo que mediante comunicación fechada del 26 de enero de 2024 y notificada al recurrente el 29 de enero de 2024, la Lcda. María T. Quintana Román, en su carácter como Presidenta de la Comisión Industrial (Presidenta) y al amparo del Art. 6.7(4) del Reglamento de Recursos Humanos que se aprobó el 30 de octubre de 2008, notificó que, efectivo el 29 de enero de 2024, sería trasladado al puesto de Supervisor de la Unidad de Digitalización y Control, División de Secretaria, bajo la supervisión del Lcdo. Felipe Ferrer Rodríguez. Además, indicó que en dicha carta fue informado que estaría dirigiendo, coordinando y supervisando los trabajos del área y que esto no afectaría su clasificación actual ni su salario.

En desacuerdo, esbozó que presentó su *Apelación* al amparo del Art. 6.7 (2)(c) del Reglamento de Recursos Humanos que establecía el derecho de un empleado gerencial a presentar una apelación cuando entendiera que los cambios de deberes, autoridad o responsabilidad no eran afines con su puesto. En este sentido, señaló que, en la carta del 26 de enero de 2024, la Presidenta no estableció los motivos o propósitos del traslado. Por lo tanto, razonó que el mismo era arbitrario y caprichoso, además, que constituía un despojo de funciones en violación al reglamento de personal vigente. A su vez, indicó que el traslado de puesto atentaba contra su interés propietario en el puesto de carrera que ocupaba, así como derechos constitucionales. Por lo cual, solicitó que ordenara a la Comisión Industrial a dejar sin efecto el traslado y despojo de las funciones del recurrente y que lo reubicara en su puesto de carrera.

En respuesta, el 7 de agosto de 2024, la Comisión Industrial presentó su *Oposición a Apelación* en la cual negó la mayoría de las alegaciones.[2] En particular, alegó que el movimiento de personal fue

---
[2] *Véase*, Entrada 3 del apéndice del recurso, SUMAC TA, págs. 23-26.

realizado bajo la facultad de administración de la Presidenta de la Comisión Industrial. Además, arguyó que la Presidenta tenía facultad para determinar e identificar las necesidades operacionales y ubicar a un empleado gerencial de carrera donde mejor sirviera a la agencia, sin incurrir en actuaciones arbitrarias, *ultravires* o caprichosas. De igual forma, enfatizó que, el traslado, no alteraba las funciones del recurrente en calidad de supervisor, toda vez que la naturaleza de la clase continuaba sin cambio y sus funciones esenciales se contemplaban en la clase donde este estaba ubicado. Adicionalmente, aclaró que, su responsabilidad primaria era la supervisión, coordinación y evaluación de las actividades y procesos que se llevaban a cabo en una sección adscrita a la Secretaría de la Comisión Industrial y trabajaba bajo la supervisión general de un Gerente, Subsecretario o Secretario Ejecutivo de la Comisión Industrial. Esto, según la descripción de la Clase de Supervisor de Secretaría y Administración de la Comisión. Por todo lo anterior, solicitó la desestimación de la *Apelación*.

Posteriormente, el 12 de septiembre de 2024, la Comisión Industrial presentó su *Escrito en Cumplimiento de Orden* a los fines de contestar las alegaciones de la *Apelación* de manera específica.[3] Allí, arguyó afirmativamente que el traslado no constituyó un despojo de funciones, toda vez que el recurrente supervisaba y dirigía un grupo de empleados en las tareas de digitalización y clasificación. Es decir, el puesto de supervisor no estaba adscrito a un lugar específico de la Comisión. Añadió que, el hecho de que el señor Ortiz tuviera un horario de operaciones en la Comisión Industrial no atentaba con sus derechos como empleado exento.

Así las cosas, el 11 de abril de 2025, las partes presentaron su *Informe Conjunto de Conferencia con Antelación a la Vista Enmendado*.[4] Mediante este, únicamente estipularon que el señor Ortiz era un

---

[3] *Véase*, Entrada 3 del apéndice del recurso, SUMAC TA, págs. 30-31.
[4] *Véase*, Entrada 3 del apéndice del recurso, SUMAC TA, págs. 32-48.

empleado gerencial exento. Celebrada la vista administrativa el 22 de mayo de 2025, el 30 de junio de 2025, el Oficial Examinador emitió el *Informe del Oficial Examinador*.[5] En este, recomendó a la Comisión Industrial declarar No Ha Lugar la *Apelación* presentada por el señor Ortiz. A su vez, realizó las siguientes determinaciones de hechos:

1. Mediante comunicación de 26 de enero de 2024, recibida por el apelante el 29 de enero de 2029, la Lcda. Maria T. Quintana Román, Presidenta de la Comisión Industrial, notificó al señor Jorge Ortiz Sánchez que, efectivo el 31 de enero de 2024 había sido trasladado como Supervisor de la Unidad de Digitalización y Control. adscrita a la División de Secretaria, bajo la supervisión del Lcdo. Felipe Ferrer Rodriguez. Secretario Ejecutivo. Se le indicó que estarla dirigiendo, coordinando y supervisando los trabajos del área. Su horario sería de 8:00 a.m. a 4:30 p.m. conforme a la necesidad de servicio. Se le informó además en la comunicación que su traslado no afectarla su clasificación actual y su salario se mantendría inalterado. Exhibit 5 Conjunto.

2. En ese momento el Apelante ocupaba y continua ocupando el puesto # 343 en la Comisión Industrial, con el Título Oficial del Puesto: Supervisor. Además, en la descripción del puesto sometida en evidencia, surge un encasillado que indica Titulo Funcional del Puesto: Supervisor de Servicios Generales y Planta Física. Oficina de Administración. Exhibit 4 Conjunto.

3. La Comisión Industrial posee la Clase G3110, Supervisor (a) (Secretaría y Administración). En ella se describen veintinueve (29) Funciones y Responsabilidades de dicha clase: Entre ellas dirigir, supervisar, coordinar, evaluar y monitorear las operaciones, actividades y el servicio que se presta en una sección adscrita al área de Secretaría o al área de Administración de la Comisión Industrial; organiza, supervisa y monitorea los procesos, actividades administrativas y operacionales correspondientes a la unidad funcional asignada y recomienda e incorpora los cambios necesarios para impartirles agilidad, confiabilidad y eficiencia; es responsable de que las funciones y trabajos de la Sección asignada se lleven a cabo en cumplimiento con la reglamentación, políticas, procedimientos, normativas y controles establecidos por la Comisión y agencias reguladoras, nude informes, orienta y supervisa al personal, recomienda amonestaciones. Realiza otras funciones cuando las necesidades operacionales y de servicio lo requieran, entre otros. Conforme a la descripción de la Clase el Supervisor (Secretaria y Administración) trabaja bajo la supervisión general de un Gerente, Subsecretario o Secretario Ejecutivo de la Comisión o un funcionario de nivel jerárquico superior. Exhibit 2 Conjunto.

4. La Comisión Industrial no dispone de un puesto de Supervisor de la Oficina de Servicios Generales y

---

[5] *Véase*, Entrada 3 del apéndice del recurso, SUMAC TA, págs. 12-18.

Planta Física. El Plan de Clasificación y Estructura Retributiva de Empleados de la Comisión Industrial de Puerto Rico aprobado y vigente, solo contempla la clase de Supervisor (Secretarla y Administración). Exhibit 3 Conjunto. Sobre este particular el testigo Gabriel Morales Navarro declaró que "el mismo Supervisor puede ser Supervisor en otra área."

5. Conforme a su propio testimonio desde junio del año 2003 el Apelante siempre ha sido Supervisor en la Comisión Industrial. Lo ha sido en Nóminas, Compras, Servicios Generales y ahora en la Unidad de Digitalización y Control de Documentos adscrito a la Secretaria. Tiene bajo su supervisión a chico (5) empleados. Desde el traslado impugnado este ha continuado trabajando en el Edificio Sede de la Comisión Industrial en San Juan, su salario y sus beneficios marginales tampoco se han visto afectados por el traslado efectuado. El Lcdo. Carlos Ramos Moyano, Secretario ejecutivo de la Comisión Industrial es su Supervisor. Exhibit 3 Apelada.

6. La Lcda. María T. Quintana Román Presidenta de la Comisión Industrial testificó que como parte de sus funciones está la de llevar a cabo las funciones administrativas de la Agencia. Declaró que la fuente de su autoridad emana de Ia ley 45 de 18 de abril de 1935, según enmendada, Ley del Sistema de Compensaciones por Accidentes del Trabajo. Expuso que las razones para el traslado del Apelante fueron las necesidades del servicio en el Área de Secretaria. Específicamente señaló que cuando ella llegó a la Comisión Industrial en diciembre del año 2023 se estaba estableciendo un nuevo programa electrónico de nombre SPAIA. Ese Proyecto se le asignó a la Secretaria para que junto con la Oficina de Tecnología y Sistemas de Información (OTSI) trabajaran el mismo. El entonces Sub Secretario Sr. Jaime Valero, el Sr. Bruno Lebrón y la OTSI estarían trabajando directamente con el contratista que establecería dicho proyecto. El líder del Grupo de trabajo de la Agencia seria el Sub Secretario Jaime Valero. En ese momento el Sr. Valero tenía entre otras funciones, la de supervisión sobre el Área de Vistas Médicas. Así que tomando en cuenta que el nuevo Proyecto SPAIA tomaría mucho de su tiempo, se decidió traer a la Sra. Moraima Flores Supervisora de la Unidad de Control y Digitalización a supervisar el Área de Vistas Médicas. Es por ello por lo que surge la necesidad de trasladar al Apelante Sr. Jorge Ortiz a supervisar la Unidad de Control y Digitalización adscrita a Ia Secretaria. Esto debido a que todas las áreas tienen que tener un supervisor. Actualmente al Sistema SPAIA aún se le están haciendo cambios y ajustes. De hecho, desde enero de 2024 los contratistas están físicamente en la Agencia realizándole ajustes al nuevo Sistema. Ello ha provocado que tanto el Secretario como el Sub Secretario se mantengan realizando reuniones con las distintas áreas. Además, estos funcionarios deben estar disponibles para contestar y proveer la información que les sea requerida por los contratistas del Sistema SPAIA. Testificó, además, que aún falta Ia Fase Externa del Sistema. Por ello indicó, que aúm prevalece la necesidad del servicio en cuanto al

Apelante. En el breve contrainterrogatorio que le fue realizado por la parte Apelante, su testimonio no fue impugnado. Este nos mereció entera credibilidad. Por tal motivo, la relación de hechos según descrita por la testigo queda establecida como una determinación de hechos.

7. El 16 de mayo de 2024 el Lcdo. Carlos Ramos Moyano Secretario Ejecutivo de la Comisión Industrial le remitió al Apelante un correo electrónico donde le incluyó una hoja con la descripción del puesto de Supervisor en el Área de Secretaria, Unidad de Control. Esta hoja contiene las funciones del mencionado puesto, al cual había sido trasladado. En dicha comunicación se le solicitaba, además que la evaluara para poder discutirla. La mencionada hoja se refiere al mismo puesto # 343 ocupado por el Apelante en la Comisión Industrial, con el Título Oficial del Puesto: Supervisor. Además, surge un encasillado que indica Titulo Funcional del Puesto: Supervisor de Secretaria, Unidad de Control. Este documento nunca fue discutido o firmado por el Apelante Jorge Ortiz Sánchez. Exhibit 6 Apelada. Véase que el Lcdo. Ramos Moyano le envió un correo electrónico de seguimiento sobre el mism6 asunto al Apelante el 13 de junio de 2024. Exhibit 8 Apelada.

8. Nada en la prueba recibida y creída sostiene alegación alguna de actuación arbitraria, caprichosa o discriminatoria contra el Apelante de parte de la Comisión Industrial o su Presidenta en relación con el traslado impugnado o apelado.

Cónsono con lo anterior, concluyó que nada en la prueba presentada sostenía alegación de actuación arbitraria, caprichosa o discriminatoria en contra del señor Ortiz por parte de la Comisión Industrial o su Presidenta. Por tanto, reiteró que, dicha funcionaria actuó dentro de la autoridad conferida y bajo la necesidad del servicio de la Agencia, por lo que fue, únicamente, ante dicha situación que la Lcda. Maria T. Quintana Román ordenó el traslado del recurrente. Añadió que, el recurrente no sufrió disminución alguna en su salario, derechos adquiridos o beneficios marginales.

Luego de examinar los planteamientos de las partes, el 18 de agosto de 2025, la Comisión Industrial emitió su *Determinación de Autoridad Nominadora con Respecto a Vista Administrativa Sobre Traslado Ilegal Despojo de Funciones* en la cual acogió en su totalidad el informe del Oficial Examinador emitido el 30 de junio de 2025.[6] En

---

[6] *Véase*, Entrada 2 del apéndice del recurso, SUMAC TA, págs. 1-4.

virtud de lo anterior, declaró No Ha Lugar la *Apelación* presentada por el señor Ortiz. En primer lugar, realizó las siguientes determinaciones de hechos:

1. El Sr. Jorge Ortiz Sánchez ocupaba, al momento de los hechos, el puesto número 343 de Supervisor, adscrito a la Oficina de Administración, con el título funcional de Supervisor de Servicios Generales y Planta Física.

2. Mediante comunicación escrita de 26 de enero de 2024, la Presidenta de la Comisión Industrial, Lcda. María T. Quintana Román, notificó al Sr. Ortiz Sánchez que, efectivo el 31 de enero de 2024, sería trasladado al puesto de Supervisor de la Unidad de Digitalización y Control, adscrita a la División de Secretaría.

3. Se le informó que su traslado no afectaría su clasificación ni su salario y que continuaría laborando en el Edificio Sede de la Comisión Industrial. Esta información fue corroborada por el propio apelante durante la vista.

4. La evidencia documental y testifical demostró que la clase de puesto que ocupa el apelante, identificada como G3110 -Supervisor (Secretaría y Administración), contempla funciones amplias de supervisión, coordinación y evaluación de operaciones en diversas áreas administrativas, incluyendo funciones similares a las que le fueron asignadas en la nueva unidad.

5. La Comisión Industrial no cuenta con un puesto clasificado específicamente como Supervisor de Servicios Generales y Planta Física. Según testimonio del Sr. Gabriel Morales Navarro, el mismo Supervisor puede ser asignado a distintas áreas conforme a las necesidades institucionales.

6. El traslado obedeció a una necesidad de servicio concreta relacionada con la implantación del nuevo Sistema de Procesos Adjudicativos con Inteligencia Artificial (SPAIA). Como parte del reordenamiento funcional requerido para dicha implantación, se designó al apelante a liderar la Unidad de Digitalización y Control, ante la reasignación de la anterior supervisora de esa unidad a otras tareas prioritarias.

7. El Sr. Ortiz Sánchez no sufrió menoscabo salarial, de beneficios marginales ni cambio en su clasificación como consecuencia del traslado.

8. No se evidenció en el récord administrativo actuación alguna de índole arbitraria, caprichosa o discriminatoria por parte de la Comisión Industrial en la determinación de traslado.

En vista de las determinaciones de hechos antes formuladas, la Comisión Industrial determinó que, el traslado efectuado al señor Ortiz se realizó conforme a las facultades legales y reglamentarias de la

autoridad nominadora, respondiendo a necesidades del servicio debidamente fundamentadas. Así pues, determinó que, no existía base jurídica ni fáctica que sustentara las alegaciones de traslado ilegal o despojo de funciones por parte del recurrente. Sostuvo que el traslado del señor Ortiz se llevó a cabo como parte de la reorganización y distribución de funciones necesarias para la implantación de proyectos institucionales. Ello sin que mediara actuación ilegal, arbitraria o discriminatoria.

Inconforme, el 15 de septiembre de 2025, el recurrente presentó el recurso que nos ocupa y formuló los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ LA COMISIÓN INDUSTRIAL DE PUERTO RICO AL EMITIR UNA RESOLUCIÓN FINAL SUSCRITA POR LA DIRECTORA DE RECURSOS HUMANOS EN VIOLACIÓN A LA SECCIÓN 3.3 Y 3.14 DE LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME Y SIN AUTORIDAD PARA ELLO.

> SEGUNDO ERROR: ERRÓ LA COMISIÓN INDUSTRIAL DE PUERTO RICO AL ADOPTAR EL INFORME DEL OFICIAL EXAMINADOR QUE NO CONTIENE, DESGLOSA NI CONSIDERA LA TOTALIDAD DE LA PRUEBA ADMITIDA DURANTE LA VISTA EVIDENCIARIA, LA TOTALIDAD DE LOS TESTIMONIOS, NI LAS OBJECIONES DE LA PARTE APELANTE EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.

> TERCER ERROR: ERRÓ LA COMISIÓN INDUSTRIAL DE PUERTO RICO AL ADMITIR COMO EVIDENCIA INFORMACIÓN OBJETADA OPORTUNAMENTE POR SER IMPERTINENTES A LA CONTROVERSIA EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.

Atendido el recurso, el 16 de septiembre de 2025, emitimos una *Resolución* ordenándole a la parte recurrente a informar si se disponía a presentar la transcripción de la prueba oral de la vista celebrada en el caso de epígrafe. A su vez, otorgó hasta el 3 de octubre de 2025, para presentar su alegato en oposición. En cumplimiento con lo anterior, el 29 de septiembre de 2025, la parte recurrente notificó que iba a presentar la transcripción de la prueba oral y solicitó el término de treinta (30) días para presentar la misma. Tras varias incidencias procesales, el 17 de noviembre de 2025, la parte recurrida presentó su *Alegato en Oposición* y negó que la Comisión Industrial cometiera los

errores que el recurrente le imputó en su recurso. Finalmente, el 18 de noviembre de 2025, la parte recurrente presentó la transcripción de la vista oral.

Con el beneficio de la comparecencia de ambas partes y la transcripción de la prueba oral procedemos a atender el asunto ante nos. *Veamos.*

## II.

### -A-

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra*, pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. *Vázquez v. Consejo de Titulares,* supra.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025). Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR,* 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd. Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

**-B-**

La Sección 3.3 de la Ley Núm. 38-2017, según enmendada, mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9643, dispone que:

> Toda agencia podrá designar oficiales examinadores para presidir los procedimientos de adjudicación que se celebren en ella, los cuales no tendrán que ser necesariamente abogados, particularmente cuando el procedimiento en cuestión es uno informal. El jefe de la agencia podrá delegar la autoridad de adjudicar a uno o más funcionarios o empleados de su agencia. A estos funcionarios o empleados se les designará con el título de jueces administrativos.
>
> [...]

Por su parte, la Sección 3.14 de la LPAUG, 3 LPRA sec. 9654, expresa que:

> [l]a orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.

**-C-**

La Ley Núm. 45 del 18 de abril de 1935 intitulada *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, según enmendada, 11 LPRA sec.1 *et seq.* (Ley Núm. 45 de 1935), es un estatuto de naturaleza remedial. Entre sus fines, se encuentra crear una Comisión Industrial, determinar sus facultades y deberes, crear el

cargo de Administrador del Fondo del Estado (CFSE), y definir las facultades y deberes de dicho Administrador. Dichos organismos fueron creados para implementar las disposiciones de este estatuto. Art. 6 de la Ley Núm. 45 de 1935, 11 LPRA sec. 8.

En lo pertinente, la Comisión Industrial es un organismo de carácter fundamentalmente adjudicativo y revisor, con funciones de naturaleza cuasi judicial y cuasi tutelar. En específico, el Art. 6 (B) de la Ley Núm. 45 de 1935, *supra*, dispone que, el Presidente establecerá y será responsable de ejecutar la política administrativa de la Comisión, y tendrá total facultad para reglamentar la misma. A su vez, dicho Artículo indica que, el Presidente será el Jefe Administrativo y autoridad nominadora de la Comisión. A esos efectos, adoptará todas las determinaciones de personal y será responsable de adoptar los reglamentos necesarios y velará por el cumplimiento de la política pública y los propósitos de esta Ley. Íd. Responderá directamente al Gobernador y ejercerá todas las funciones, deberes y prerrogativas de su cargo, de acuerdo con el reglamento que establezca el Presidente de la Comisión a esos efectos. Íd.

Ahora bien, conforme a la Ley Núm. 45 de 1935, *supra*, se creó el Reglamento de Recursos Humanos de la Comisión Industrial de Puerto Rico aprobado el 30 de octubre de 2008 (el Reglamento). Dicho Reglamento se adoptó con el propósito de establecer las normativas esenciales para lograr un sistema de administración de recursos humanos que garantice el derecho al principio de mérito que cobija a los empleados de carrera de la Comisión. Reglamento de Recursos Humanos, pág. 1. Particularmente, en su Sección 6.7 expresa que, cuando las circunstancias lo justifiquen se podrá efectuar cambios en los deberes, responsabilidades o autoridad de los puestos. Todo cambio responderá a la necesidad o conveniencia de la Comisión; ningún cambio tendrá motivación arbitraria o caprichosa ni propósitos disciplinarios. Íd. Conforme a lo anterior, la Presidenta podrá

establecer sus propios criterios para atender sus prioridades programáticas o del plan de trabajo. Íd.

Respecto a los traslados, la Sección 6.15 indica que, la Comisión efectuará traslados de conformidad con las necesidades del servicio. El traslado podrá efectuarse respondiendo para beneficio del empleado a solicitud de éste y respondiendo a las necesidades del servicio público. Íd. No obstante, aclara que "para justificar un traslado deberá existir la necesidad de recursos humanos adicionales en la Comisión para atender nuevas funciones o programas o para la ampliación de los programas que ésta desarrolla". Íd.

Además, el reglamento prohíbe que los traslados sean utilizados como medidas disciplinarias o hechos de manera arbitraria. Por último, cuando se le notifique a un empleado "[s]obre la decisión de traslado deberá advertírsele del derecho a apelar ante el Oficial Examinador de la Comisión dentro del término de quince (15) días calendarios a partir del recibo de la notificación de traslado. Íd.

III.

Antes de atender los méritos de este recurso, es menester destacar que las determinaciones administrativas gozan de una presunción de legalidad y corrección, la cual subsistirá a menos que se produzca suficiente prueba como para derrotarlas. Por ello, al revisar las determinaciones e interpretaciones de un foro administrativo, en un ejercicio de razonabilidad, nos limitaremos a analizar si este actuó de modo arbitrario, ilegal o de modo tan irrazonable que constituyó un abuso de discreción.

En su primer señalamiento de error, el señor Ortiz argumentó que la Comisión Industrial erró al emitir una *Resolución Final* suscrita por la Directora de Recursos Humanos en violación a la Sección 3.3 y 3.14 de la LPAUG, *supra*, y sin autoridad para ello. A su vez, en su segundo señalamiento de error el recurrente planteó que la Comisión Industrial incidió al adoptar el Informe del Oficial Examinador el cual no contenía, desglosaba ni consideraba la totalidad de la prueba

admitida durante la vista evidenciaria, la totalidad de los testimonios, ni las objeciones presentadas en la vista. Ello en violación al debido proceso de ley. Finalmente, en su tercer señalamiento de error adujo que la Comisión Industrial erró al admitir como evidencia información objetada oportunamente por ser impertinentes a la controversia.

Según el derecho previamente expuesto, la Sección 3.3 de la LPAUG, *supra*, dispone que, el jefe de la agencia podrá delegar la autoridad de adjudicar a uno o más funcionarios o empleados de su agencia. A su vez, conforme al Art. 6 de Ley Núm. 45 de 1935, *supra*, delegó a la Presidenta de la Comisión Industrial la adopción de reglamentación referente a los asuntos administrativos de la entidad.

Cabe precisar que, no existe una disposición legal o reglamentaria que identifique definitivamente la persona autorizada para suscribir una determinación final sobre un asunto interno y adjudicativo de la Comisión Industrial. En apoyo a lo anterior, la Sección 3.14 de la LPAUG, *supra*, se limita a expresar que, la orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley. Ahora bien, el hecho de que la determinación final no fuera emitida por la Presidenta de la Comisión Industrial, por sí sola, no significa que no se salvaguardó su derecho a una adjudicación imparcial.

En el presente caso, se nombró un Oficial Examinador quien aquilató la prueba y emitió una recomendación, conforme a la Sección 3.3 de la LPUAG, *supra*. Además, la Presidenta de la Comisión Industrial tomó la decisión de inhibirse para salvaguardar la integridad del proceso. Por tanto, delegó su autoridad a la Directora de Recursos Humanos, una funcionaria con la capacidad de analizar y adjudicar la legitimidad del traslado del recurrente. Ello, según la recomendación emitida en el Informe del Oficial Examinador.

De igual forma, en la vista administrativa celebrada el 22 de mayo de 2025, el señor Ortiz no logró evidenciar que la actuación de la Directora de Recursos Humanos al suscribir la determinación Final

violentó su derecho a una adjudicación imparcial, según lo requiere nuestro ordenamiento. Por último, entendemos que, asignar el caso a la Directora de Recursos Humanos aseguró que este fuera atendido por una persona sin interés en su resultado, asegurando así una adjudicación imparcial. En vista de lo anterior, resolvemos que el primer señalamiento de error no se cometió.

En cuanto al segundo y tercer señalamiento de error, el señor Ortiz sostuvo que la Comisión Industrial actuó incorrectamente al acoger el Informe del Oficial Examinador, el cual, según alegó, no incorporó ni evaluó adecuadamente la totalidad de la prueba presentada durante la vista evidenciaria, incluyendo los testimonios y las objeciones formuladas. A su juicio, ello constituyó una violación al debido proceso de ley. Asimismo, en su tercer señalamiento de error, planteó que la Comisión industrial erró al admitir como evidencia información objetada oportunamente por ser impertinente a la controversia. Dado que ambos señalamientos se refieren al manejo de la prueba por parte del foro administrativo, los discutimos de forma conjunta.

Tras examinar minuciosamente el expediente, las determinaciones de hecho y la transcripción de la prueba oral, concluimos que los planteamientos del recurrente carecen de fundamento. Conforme al marco jurídico aplicable, la Sección 6.7 del Reglamento de Recursos Humanos, *supra*, autoriza la modificación de deberes, responsabilidades o autoridad de un puesto cuando así lo exijan las circunstancias, siempre que dichas modificaciones respondan a la necesidad o conveniencia de la Comisión y no persigan fines arbitrarios, caprichosos o disciplinarios.

De igual forma, la Sección 6.15 del Reglamento, *supra*, dispone que los traslados deberán realizarse conforme a las necesidades del servicio. Entre otros elementos, permite la reubicación de personal cuando lo requiera el buen funcionamiento del servicio público, a la vez

que prohíbe expresamente que tales traslados se utilicen como medidas disciplinarias o que se efectúen de manera arbitraria.

Del expediente ante nuestra consideración surge que, el 26 de enero de 2024, la Presidenta de la Comisión Industrial remitió al recurrente una carta intitulada *Traslado Como Supervisor a la Unidad de Digitalización y Control en la División de Secretaría.* Allí, se le notificó que había sido trasladado como supervisor a la Unidad de Digitalización y Control. Asimismo, se le notificó que estaría dirigiendo, coordinando y supervisando los trabajos de dicha área y, que dicho traslado no afectaba su clasificación actual ni su salario. Por otra parte, en el documento intitulado *Descripción del Puesto*, surge que el título oficial del puesto del señor Ortiz era de supervisor. Además, allí surgían las funciones de dicho puesto. En lo pertinente, el recurrente tenía la responsabilidad de: planificar, coordinar, supervisar y evaluar las actividades de una división, área, sección, oficina o unidad de secretaría de la Comisión Industrial; verificar y asegurar el cumplimiento de las leyes, reglamentos, normas, procedimientos, métodos, técnicas y prácticas que regían la división, área, sección, oficina o unidad de secretaría bajo su responsabilidad y; asignar, supervisar y evaluar el trabajo de empleados adscritos a su división, área, sección, oficina o unidad de secretaría.

Nótese que, de la *Descripción del Puesto* no surge que este estaba asignado a un departamento en particular. De igual forma, la carta de traslado enfatizaba que no se afectaría su clasificación, ni su salario y permaneció en la sede de la Comisión Industrial. En apoyo a lo anterior, el Reglamento de Recursos Humanos establece que, el traslado podrá efectuarse por necesidades del servicio. Nos parece meritorio aclarar que, de los documentos presentados ante nuestra consideración, así como de la transcripción de la prueba oral no surge que el recurrente fue trasladado como medida disciplinaria o de manera arbitraria.

Finalmente, señalamos que el oficial examinador no tenía el deber de excluir prueba que fue objetada durante la vista

administrativa, toda vez que resolvió que dicha objeción era improcedente. Por ello, el recurrente no podía exigir que se excluyera de las determinaciones de hechos prueba que un oficial examinador aquilató, únicamente, porque fue objetada. Ello, cuando como juzgador de la prueba descartó las objeciones por inmeritorias.

Cónsono con lo anterior, colegimos que el señor Ortiz no logró rebatir la presunción de corrección que amparan las decisiones administrativas, ni demostró que el proceso adjudicativo infringió sus garantías de un debido proceso de ley. Entiéndase, el señor Ortiz no presentó prueba documental o testifical que nos moviera a concluir que su traslado fue arbitrario o como medida disciplinaria.

Por tanto, evaluado el expediente ante nuestra consideración, el derecho aplicable y la transcripción de la prueba oral, no encontramos que dicho foro haya errado en sus conclusiones de derecho. Así pues, concluimos que tanto las determinaciones de hechos como las conclusiones de derecho la Comisión Industrial estuvieron basadas en la prueba documental y de conformidad al derecho aplicable por lo que debemos sostener sus determinaciones. Máxime, cuando no encontramos en las actuaciones de dicho foro la existencia de pasión, prejuicio, parcialidad o error manifiesto. Tampoco encontramos que la actuación de la Comisión Industrial haya sido arbitraria o haya tomado una determinación irrazonable o ilegal. Así pues, tenemos el deber de validar la determinación realizada por la agencia. De este modo, no se cometió el segundo ni el tercer señalamiento de error.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones